# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ERLINDA BROWER,**

     **Plaintiff,**

**v.**                                                                                      **No. 16-cv-1334 SMV/LF**

**SPROUTS FARMERS MARKET, LLC,**
**and JOHN DOE,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion in Limine to Exclude the Testimony of Russell Kendzior [Doc. 89], filed on October 17, 2017, and Defendant's Motion for Summary Judgment [Doc. 90], filed on October 20, 2017. The Court heard oral argument on both motions on March 16, 2018. Having considered the briefing, oral argument, relevant portions of the record, and relevant authorities, and being otherwise fully advised in the premises, the Court finds that Defendant's Motion in Limine [Doc. 89] is well-taken in part and will be GRANTED IN PART AND DENIED IN PART. The Court further finds that Defendant's Motion for Summary Judgment [Doc. 90] is not well-taken and will be DENIED.

## I. Background

On July 16, 2016, Plaintiff fell as she entered Defendant's store. [Doc. 90] at 1–2. There was a rectangular floor mat just inside the entryway. The mat is carpeted material surrounded by a hard rubber border. *Id.* at 2, 3. The southern border of the mat was against the door. The northern border was closer to the interior of the store. Thus, Plaintiff entered the store walking from south to north. Plaintiff entered the store, took a couple of steps across the mat, and then

tripped near the northern border of the mat. *Id.* at 1. The significance of where she tripped on the mat will become apparent shortly. Plaintiff broke her hip and shoulder as a result of the fall. [Doc. 92] at 1.

In the Complaint, Plaintiff alleged that she tripped on "debris or another obstacle which posed a tripping hazard." [Doc. 1-1] at 2. In her written discovery responses, she stated that she "tripped over a rise in the floor created by the recessed mat and raised hard rubber border [of] that mat." [Doc. 90] at 2 (internal quotation marks omitted); [Doc. 90-1] at 3. When deposed, she admitted that she did not know what caused her to fall. [Doc. 90] at 2. She testified that "something just made [her] trip" and her "foot seemed to have caught something." [Doc. 90-5] at 2 (22:3–4). But she could not say what that "something" was. *Id.* at 2 (21:17–19, 22:8–10). "I was walking, and then the next thing I know, I was tripped and was going forward." *Id.* at 2 (22:8–10).

Another customer at the store, Paul Serna, was deposed. He testified that he was standing in a checkout line facing the entryway when he observed Plaintiff walk into the store.[1] [Doc. 90-6] at 2 (18:5–14, 21:1–6). He observed a "ripple"[2] in the mat and saw Plaintiff fall. *Id.* at 2 (21:1–6). He described the ripple as being approximately four inches long and between one quarter of an inch and half an inch in height. *Id.* at 3 (24:12–25). He was asked to draw a diagram of the mat and to place an "X" where he saw the ripple. Significantly, he drew the X at the *southwest* corner of the mat, just inside the doorway. *Id.* at 3 (22:10–24:11); [Doc. 90-2].

---

[1] This is apparently disputed. The incident was captured on a surveillance video. According to Defendant, the video shows that Mr. Serna was not looking toward the entryway at the time of the incident and thus could not have seen Plaintiff fall.

[2] This alleged defect has been described at various times as a "ripple," a "buckle," a "curl," and a "rise in elevation." Throughout most of this opinion, the Court uses the term "buckle."

The incident was captured on the store's surveillance video. [Doc. 90] at 2; Ex. 2 to [Doc. 92]. In the video, Plaintiff enters the store, walks across the mat, and trips as she approaches the *northwest* corner of the mat. Ex. 2 to [Doc. 92] at 9:17:07–9:17:12. It is not clear from the video what, if anything, caused Plaintiff to trip.[3] Less than a minute after Plaintiff falls, a store employee[4] steps onto the mat and stands near the place where Plaintiff tripped. *Id.* at 9:17:49–9:17:51. He places his foot on the carpet near the northern border, and appears to be feeling for anything that might have tripped Plaintiff. *Id.* at 9:17:51–9:17:54. The video runs for nearly another 20 minutes. The employee returns to the same area on the mat two more times. Each time, he bends down and places his fingers on the mat near the location where Plaintiff fell. *Id.* at 9:32:00–9:32:03, 9:32:36–9:32:38. He appears to be checking for a "lip," or change in elevation between the carpet and the border.[5] *Id.*

Plaintiff retained a walkway safety expert, Russell Kendzior. Mr. Kendzior prepared an expert report based on his review of the surveillance video (and individual images extracted from it), relevant portions of the record, written discovery, and Defendant's incident report. [Doc. 91] at 27. Mr. Kendzior's report states, "In reviewing the surveillance videos it is clear that Mrs. Brower tripped and that she tripped on something located on the northwest corner of the entryway mat at the east entrance" of the store. *Id.* at 29. Mr. Kendzior wrote that it is "common knowledge in retail sales operations" that this type of mat has "a propensity to bunch up on the edges and corners and create a tripping hazard. This bunching up occurs as foot and shopping

---

[3] Two things are clear from the video: First, Plaintiff did not trip over any debris. Ex. 2 to [Doc. 92]; [Doc. 90] at 2. Plaintiff has abandoned that theory. Second, Plaintiff's right foot is very close to the northern border of the mat as she begins to pitch forward. *See* [Doc. 90-3] at 2 (lower photo), 3 (upper photo).
[4] The parties dispute the identity of the employee. *See* [Doc. 92] at 4; [Doc. 100] at 6. He has apparently not been deposed.
[5] Plaintiff argues that the employee was, in fact, tamping down a buckle in the mat. *See* [Doc. 92] at 9.

cart traffic pushes the mat up against the lip of the recessed bay in which the mat is set." *Id.* He cited to various standards on "proper use of matting" as set out by the National Floor Safety Institute and other entities. *Id.* at 29–30. Mr. Kendzior ultimately opined that Defendant "failed to exercise the requisite degree of care recognized in the retail sales industry to keep the premises at issue safe" by failing to (1) have appropriate walkway safety policies and procedures, (2) train employees on mat placement and inspections, (3) inspect store matting, (4) provide a safe walking surface, and (5) comply with industry standards. *Id.* at 30.

Mr. Kendzior inspected the mat on September 5, 2017, approximately three months after his expert report was disclosed and more than a year after the incident. [Doc. 90-4] at 11 (70:18–73:17); [Doc. 92] at 14. He was deposed later that day. Prior to being deposed, however, he reviewed additional materials, i.e., the Serna deposition and Defendant's policies regarding floor maintenance. He did not change his basic opinion, i.e., that Plaintiff tripped over a defect in the mat. However, he offered two alternative theories as to the particular nature of the defect. Based on his preliminary review of the video and still photographs taken from it, he had originally concluded that Plaintiff lost her balance and fell due to a "change in elevation" between the carpeted portion of the mat and the hard rubber border.[6] [Doc. 90-4] at 3 (14:15–15:11, 15:20–16:2, 16:18–17:8). At the time, he believed Plaintiff had caught the sole of her shoe on this change of elevation, causing her to fall. *Id.* at 3 (17:1–6). He explained that this was the opinion he had formed prior to preparing his expert report, based on the information he had at that time. *Id.* at 3 (16:18–24).

---

[6] Hereinafter, the Court will refer to this as the "border" theory.

Later in his deposition, however, he offered a different opinion regarding causation: "[M]y understanding is, the proximate cause of her trip-and-fall was the buckle in the carpet, . . . the buckle or ripple described by Mr. Serna."[7] *Id.* at 4 (25:1–6). "I think we can eliminate everything short of a buckle." *Id.* at 4 (25:9–10). He added that the mat "was installed as to have some defect, presumably a buckle or a curl of some type that was observed by Mr. Serna." *Id.* at 3 (17:9–15). When it was pointed out that Mr. Serna had placed the buckle in the southwest corner of the mat (rather than the northwest corner, where Plaintiff actually fell), Mr. Kendzior stated that the discrepancy did not cause him to change his opinion. *Id.* at 9 (50:20–52:21). He testified that he was not relying solely on Mr. Serna's testimony. He pointed, for example, to the video footage of the store employee returning to the same place on the mat, which suggested to him that there was a visible buckle in the carpet which the employee was attempting to flatten. *Id.* at 8 (45:4–18), 10 (55:12–57:8). He conceded that one "can't really tell" from the video whether there was a buckle in the carpet, *id.* at 9 (53:23–25), and he did not see one when he inspected the mat. *Id.* at 5 (28:10–13).

During his inspection, Mr. Kendzior had measured the difference in height between the border of the mat and the carpeting. He determined that the height difference exceeded a quarter of an inch, which qualified it as a tripping hazard under the applicable building and safety codes.[8] *Id.* at 11 (70:2–4, 70:18–71:23); *see also id.* at 5 (27:15–19). While ultimately concluding that Plaintiff tripped over the buckle described by Mr. Serna, Mr. Kendzior testified that he could not rule out this height difference (between the carpet and the border) as a cause of

---

[7] Hereinafter, the Court will refer to this as the "buckle" theory.
[8] Mr. Kendzior could not testify to a precise measurement. [Doc. 90-4] at 11 (70:18–71:13). He testified that he took a range of measurements across the border strip and found that the height difference at all points was greater than a quarter of an inch, but less than three-eighths of an inch. *Id.*

the fall. In short, he testified that "[t]he video clearly shows her tripping on some form of change in elevation" in the mat. *Id.* at 5 (27:3–5). But he could not say whether that elevation change was the buckle as described by Mr. Serna, or the height difference between the carpet and the border.

Mr. Kendzior also testified that he reviewed Defendant's floor inspection and maintenance policies, which were provided to him after he submitted his report but before he was deposed. [Doc. 89-3] at 2 (9:18–25). Mr. Kendzior discussed, in general terms, employee training, inspection, and floor safety standards. *Id.* at 14–16. He testified that Defendant did not have an appropriate maintenance and inspection program, *id.* at 14–15, and that Defendant's employees "were not trained and didn't recognize the inherent defect, being some form of a buckle or delamination in the carpet." *Id.* at 4 (18:20–22, 20:7–14). He testified that Defendant thus allowed the hazardous "change in elevation" to exist. *Id.* at 4 (20:7–14).

Defendant's expert, Walter Drew, was deposed six days later on September 11, 2017. [Doc. 100-2] at 1. Mr. Drew testified that he had inspected the mat and had measured the difference in height between the carpeting and the border. *Id.* at 3 (17:1–6). He found it to be exactly one quarter of an inch, which he testified was in compliance with all applicable codes. *Id* at 3 (17:1–6, 19:1–9). Mr. Drew testified that he had reviewed some depositions and "various other things" between the time he drafted his expert report and the date of his deposition. *Id.* at 2 (11:4–18). It is not clear from the record whether that review caused him to change any of his opinions. It is clear, however, that he was prepared to testify at his deposition on the height difference between the carpeting and the border, and whether that difference constituted a

tripping hazard under any applicable codes or standards. *See* [Doc. 100-2] (Plaintiff's examination of defense expert on tripping hazards and applicable standards).

## II. <u>Defendant's Motion in Limine to Exclude the Testimony of Russell Kendzior</u>

Defendant moves the Court to exclude Mr. Kendzior's testimony on two grounds. First, Defendant argues that Mr. Kendzior's opinions on causation and Defendant's alleged failure to maintain a safe entranceway—as disclosed in both his report and his deposition—are speculative and lack the factual basis required to satisfy the admissibility standard set forth in Fed. R. Evid. 702. [Doc. 89] at 3–5, 8–11. Defendant argues further that to the extent Mr. Kendzior's testimony is not speculative, it would not otherwise assist the jury because Mr. Kendzior merely restates what the jury could observe from the evidence. *Id.* at 5. Second, as to the opinions disclosed for the first time during his deposition, Defendant argues that such opinions should be excluded as a sanction pursuant to Fed. R. Civ. P. 37(c) because Plaintiff failed to supplement Mr. Kendzior's report as required by Fed. R. Civ. P. 26(e). *Id.* at 7–8.

In response, Plaintiff argues that Mr. Kendzior's testimony is based on sufficient evidentiary support. His reliance on the video and witness testimony allowed him to reach "logical conclusions" as to causation, which Plaintiff maintains is sufficient to satisfy the requirements of Rule 702. [Doc. 91] at 3–5. Plaintiff argues that Defendant's challenge amounts to an attack on Mr. Kendzior's credibility. *Id.* at 6. Plaintiff further maintains that no supplementation was required because the opinions Mr. Kendzior offered during his deposition were consistent with those in his expert report. *Id.* at 6–7. Plaintiff argues that Defendant conflates Mr. Kendzior's opinions with the facts on which those opinions were based. *Id.* The new evidence that Mr. Kendzior reviewed after his expert disclosure but prior to his deposition—

e.g., his inspection of the mat, Mr. Serna's deposition, and Defendant's policies on floor inspection and maintenance—"merely confirmed" the opinions he had formed from watching the surveillance video. *Id.* at 8.

<u>Legal Standards</u>

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Accordingly, when considering the admissibility of expert testimony, the trial court must ensure that the testimony (1) has "a reliable basis in the knowledge and experience of [the expert's] discipline," and (2) is "relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 597 (1993); *see also United States v. Chapman*, 839 F.3d 1232, 1238 (10th Cir. 2016). In other words, the court must "satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). This gatekeeping function is intended to "make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and thus will be helpful to the jury. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005).

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). The disclosure of expert witnesses must be accompanied by a written report containing, among other things, the expert's opinions, the basis for the opinions, and the facts and data considered by the expert in formulating the opinions. Fed. R. Civ. P. 26(a)(2)(B). Parties must timely supplement their expert disclosures. Fed. R. Civ. P. 26(e). Failure to adhere to the disclosure requirements of Rule 26(a) or (e) will prevent a party from using the non-disclosed witness or information at trial unless the failed disclosure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). In exercising its "broad discretion" to determine whether a Rule 26 violation is justified or harmless, the court considers "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)).

<u>Analysis</u>

*Exclusion of Expert Testimony Pursuant to Fed. R. Evid. 702*

The Court first considers Defendant's argument that Mr. Kendzior's testimony should be excluded pursuant to Fed. R. Evid. 702. Defendant argues that Mr. Kendzior's testimony should be excluded because it is neither relevant nor reliable. Defendant argues that Mr. Kendzior's testimony regarding Defendant's policies, procedures, employee training, and inspection protocol is not relevant because Mr. Kendzior "offered no opinion as to how any alleged deficiencies in the program contributed to or caused the incident." [Doc. 89] at 10. The Court disagrees. Testimony as to the adequacy of Defendant's floor policies may be relevant to the question of Defendant's negligence. Assuming Defendant had a duty to properly inspect and maintain its floors, which Defendant does not dispute, evidence regarding industry standards on inspection and maintenance of retail floors is relevant to whether Defendant breached that duty. Put another way, if the jury were to determine that Plaintiff tripped over a defect in the mat, the jury would have to decide whether Defendant was negligent, either in allowing the defect to exist or in failing to detect it once it occurred. Defendant's policies and procedures on floor maintenance would be relevant to that inquiry, as would evidence of industry standards on retail floor maintenance. The Court will not exclude the testimony on this subject pursuant to Rule 702.

Defendant further objects to Mr. Kendzior's opinion testimony that the height difference between the carpeted portion of the mat and the border strip constituted a tripping hazard. Mr. Kendzior measured the mat and determined that the border was more than a quarter of an inch higher than the carpet. He concluded, therefore, that it constituted a tripping hazard, based

on applicable industry standards. Defendant argues that this opinion should be excluded because (1) Mr. Kendzior took his measurements more than a year after the incident, during which time the mat continued to be used and worn down, and (2) he could not exactly quantify the height difference he measured—he could only say that it was between a quarter of an inch and three-eighths of an inch. *See* [Doc. 89] at 8–9; [Doc. 99] at 6. The Court is unpersuaded by Defendant's argument that this opinion is unduly speculative. Defendant will be allowed to cross-examine Mr. Kendzior on these points and argue to the jury that his testimony lacks probative value. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Mr. Kendzior's testimony on causation, that is, what caused Plaintiff to trip and fall, is a different matter. Mr. Kendzior stated in his report that Plaintiff tripped on "something" in the corner of the mat. At his deposition he elaborated further on his two theories of causation (the "buckle" theory and the "border" theory). Defendant argues that there is no factual basis for either theory. [Doc. 89] at 9–10. With respect to the buckle theory, Defendant argues that Mr. Kendzior's opinion is based solely on Mr. Serna's deposition testimony, and the video proves that Mr. Serna is simply wrong. Since no witness will testify to there being a buckle in the carpet near the place where Plaintiff tripped, there is no factual basis for Mr. Kendzior's opinion. With respect to the border theory, Defendant argues that Mr. Kendzior took his measurements more than a year after the incident, and there is no evidence that such a height difference existed at the time of the incident. In short, Defendant argues that Mr. Kendzior's causation testimony fails under Rule 702 because there is no factual basis for the opinions.

Although the Court disagrees with much of Defendant's argument, the Court agrees that Rule 702 precludes Mr. Kendzior from giving causation testimony. Mr. Kendzior holds himself out as an expert in fall prevention and walkway safety. His testimony on what constitutes a tripping hazard might be useful to the jury in deciding the case. But he is neither a biomechanical engineer nor an accident reconstructionist. His opinions on what caused Plaintiff to fall in this particular case would not be helpful to the jury. In essence, Mr. Kendzior's opinion on causation boils down to this: "We can see Plaintiff fall in the video. We cannot tell from the video what caused her to fall. However, Mr. Serna testified that she tripped on a buckle in the mat. Therefore, in my opinion, she tripped on a buckle in the mat." That is not expert testimony; it is a lay opinion wrapped in the cloak of expert testimony. The jury can see for itself what the video depicts and decide what weight to give Mr. Serna's testimony. "Since the Supreme Court of the United States decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide." *United States v. Gutierrez–Castro,* 805 F. Supp. 2d 1218, 1224 (D.N.M. 2011). The Court agrees with Defendant that Mr. Kendzior's opinions on causation would simply not be helpful to the jury.

Moreover, Mr. Kendzior's opinions on causation are not really "expert" opinions because they are not based on "scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 702. In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion and determine whether it is both scientifically valid and relevant to the facts of the case. *See Daubert*, 509 U.S. at 594–95; *Witherspoon v. Navajo Ref. Co., LP*, 2005 WL 5988649, at *2 (D.N.M. July 18, 2005) (citing *Dodge v. Cotter Corp.,* 328 F.3d 1212,

1221 (10th Cir. 2003)).  Here, Mr. Kendzior has applied no scientific methodology or specialized knowledge in reaching his opinions on causation; he has simply drawn a logical conclusion based on the video and Mr. Serna's testimony.  The jurors are perfectly capable of doing that themselves.

Although the Court's gatekeeper function tends toward leniency, and Rule 702 is to be liberally construed, *see Daubert*, 509 U.S. at 588, the Rule exists for situations like this—i.e., where an expert seeks to offer opinion testimony that is not based on his, or any, expertise.  The jurors may view the surveillance video, hear the testimony of Plaintiff and the other witnesses, and draw their own conclusions based on their common knowledge and experience.  Mr. Kendzior will not be allowed to give any opinions on causation.  Nor will he be allowed to comment on the significance of the store employee's actions as captured on the surveillance video following the accident.

*Exclusion of Expert Testimony Pursuant to Fed. R. Civ. P. 26(e), 37(c)(1)*

Focusing on those parts of Mr. Kendzior's testimony not excluded pursuant to Rule 702, the Court next considers whether the testimony must be excluded due to Plaintiff's failure to supplement Mr. Kendzior's expert report pursuant to Fed. R. Civ. P. 26(e), 37(c)(1).  Defendant maintains that Mr. Kendzior's "change in elevation" theory was not disclosed in his expert report, which "makes no mention" of either a buckle in the carpeting or a height difference between the carpeting and the border.  [Doc. 99] at 9.  Defendant argues that the failure to disclose was neither justified nor harmless.  Specifically, Defendant contends that its counsel did not have the opportunity to prepare to depose Mr. Kendzior on his previously undisclosed opinions.  [Doc. 89] at 8.  Moreover, Defendant argues that if Plaintiff had supplemented

Mr. Kendzior's report, there would have been no need to litigate Plaintiff's motion to compel the physical inspection of Defendant's premises. *Id.* Plaintiff maintains that while Mr. Kendzior reviewed "additional facts" after his initial expert disclosure and before his deposition, they did not alter his opinions. [Doc. 91] at 8. Instead, his "inspection of the entryway mat merely confirmed what he saw on the surveillance video: a change in elevation that caused Plaintiff to trip." *Id.*

As an initial matter, the Court finds that Plaintiff was obligated to supplement Mr. Kendzior's initial expert disclosure and report after Mr. Kendzior reviewed additional evidence and conducted his inspection of the premises. It is true that the opinions Mr. Kendzior expressed in his deposition are essentially consistent with those in his report, in that he has always maintained that Plaintiff tripped on some sort of hazard or defect in the mat. But the report does not state that the height difference between the carpeting and the border of the mat constituted a tripping hazard. *See* [Doc. 91] at 27–30. And, even if the Court were to find that Mr. Kendzior's report adequately disclosed his opinion that the border created a tripping hazard, there is no question that the opinions he expressed during his deposition were based on new evidence that Mr. Kendzior had not reviewed at the time his report was disclosed. Plaintiff was required to supplement the expert disclosure with the "basis and reasons for" his opinions and the "facts or data considered by" him in forming his opinions. Fed. R. Civ. P. 26(b)(2)(B)(i), (iii); Fed. R. Civ. P. 26(e).

Having found that Plaintiff failed to supplement the expert disclosure of Dr. Kendzior as required, Plaintiff may not offer this testimony at trial unless the failure to supplement was justified or is harmless. *See Jacobsen*, 287 F.3d at 953 (quoting *Woodworker's Supply*, 170 F.3d

at 993).  The Court considers (1) the prejudice to Defendant; (2) Defendant's ability to cure any prejudice; (3) whether introducing the testimony would disrupt the trial; and (4) Plaintiff's bad faith in failing to supplement.  *Id.*

First, the Court considers whether Defendant was prejudiced by the failure to supplement. Defendant argues that it was prejudiced in two ways.  In its briefing, Defendant maintains that it was unable to properly prepare for Mr. Kendzior's deposition.  During oral argument, counsel for Defendant argued that Plaintiff has created a "moving target" as to causation.  That is, Defendant has been unable to fully investigate, prepare, or defend its case because Plaintiff will not commit to a single theory of causation.  Moreover, Defendant claims that its expert has not opined on the buckle theory and is not currently prepared to do so.  Plaintiff maintains that Mr. Kendzior's opinions could not have surprised Defendant because they were consistent with his report.  Plaintiff also argues that, as a practical matter, it did not make sense to supplement the report because Mr. Kendzior's deposition took place immediately following his inspection. The Court finds that any prejudice to Defendant was likely minimal.

During oral argument, counsel for Defendant admitted that the prejudice flowed mainly from Mr. Kendzior's opinions on the buckle theory.  The Court has already excluded Mr. Kendzior's causation testimony based on that theory.  He will not be allowed to testify that any such buckle caused Plaintiff to fall.  Mr. Serna testified that the buckle he observed was one quarter to one half of an inch in height.  [Doc. 90-6] at 3 (24:12–25).  Mr. Kendzior will be allowed to testify that anything higher than one quarter of an inch presents a tripping hazard under the applicable standards.  *See* [Doc. 90-4] at 11 (70:2–4, 71:9–13).  Defendant's counsel is free to cross-examine him on that subject.  Defendant's expert has examined the mat and is

clearly prepared to testify on that issue. *See* [Doc. 100-2] (Plaintiff's examination of defense expert on tripping hazards and applicable standards); [Doc. 96] at 11 ("Mr. Drew will testify [that] there are no code violations found in the uniform building code version 1991, concerning these [borders] and inset carpet mats.").

As to the border theory, that Mr. Kendzior had inspected the store and measured the mat was no surprise to Defendant; his deposition took place immediately thereafter. Moreover, defense counsel confirmed during oral argument that Defendant's expert is prepared to testify on the border theory. The Court is otherwise unpersuaded that posing alternative theories of causation is inherently prejudicial to Defendant, such that Plaintiff's expert's testimony should be excluded on that basis.[9]

The remaining factors militate in favor of Plaintiff. Conceivably, any prejudice could be cured by a brief supplemental deposition of Mr. Kendzior, though Defendant did question him extensively during his deposition about his inspection of the mat and his conclusion that it constituted a tripping hazard. Further, allowing the testimony would not disrupt the trial, and there is no suggestion that Plaintiff acted in bad faith. Weighing these factors, the Court finds that Plaintiff's failure to supplement the expert disclosure of Mr. Kendzior does not warrant exclusion of his opinion that the border height constituted a tripping hazard.[10]

---

[9] Defendant also suggests that it was prejudiced because, had Plaintiff supplemented Mr. Kendzior's expert disclosure, briefing on the motion to compel the physical inspection of Defendant's store would have been unnecessary. *See* [Doc. 89] at 8. In other words, if Plaintiff had alerted Defendant that Mr. Kendzior would be supplementing his expert opinions with new evidence from the inspection, Defendant would not have objected to the inspection in the first place. Defendant puts the cart before the horse. Only after the inspection could Mr. Kendzior know whether the evidence gleaned from the inspection would inform his opinions.

[10] It is not clear to the Court whether Defendant additionally argues that Mr. Kendzior's testimony regarding Defendant's policies, procedures, employee training, and inspection protocol should be excluded on this basis. To the extent Defendant does raise such an argument, the Court rejects it. Defendant has not asserted any prejudice flowing from the failure to supplement these opinions.

### III. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's negligence claim. [Doc. 90]. Defendant argues that Plaintiff has failed to create a triable issue as to the alleged breach of duty because Plaintiff fails to show the existence of any dangerous condition on the premises to which she can attribute her fall. Defendant points out that Plaintiff, at various points, has put forth three different theories of the alleged dangerous condition: (1) the debris theory, (2) the border theory, and (3) the buckle theory. Defendant asserts that Plaintiff has failed to make a sufficient showing as to any of the three theories. *Id.* at 6. The debris theory is moot, as Plaintiff has abandoned that theory. *Id.* at 6–7. As to the buckle theory, Defendant argues that it is based solely on the testimony of Mr. Serna,[11] who placed the buckle in a different corner of the mat than the area where Plaintiff fell. *Id.* at 7. As to the border theory, Mr. Kendzior was unable to quantify the height difference between the carpeting and the border, which he measured more than a year after the fall. *Id.* at 7 n.2; [Doc. 100] at 9–10. Thus, Defendant argues, absent a sufficient showing as to the existence of a dangerous condition to which Plaintiff's fall can be attributed, her negligence claim necessarily fails.

In response, Plaintiff maintains she has shown the existence of a material factual dispute as to the alleged dangerous condition. She relies heavily on the surveillance video of the fall and its aftermath. She claims the video "firmly establishes that Plaintiff tripped on a rise in elevation in the entranceway mat." [Doc. 92] at 1. Likewise, Plaintiff argues, the footage of the employee returning to the area where Plaintiff fell in order to, per Plaintiff's interpretation, "attempt[] to pat down or flatten something in the area" or "make some sort of adjustments to the mat," is

---

[11] Mr. Kendzior testified that he did not observe a buckle on the video or on the day of his inspection. [Doc. 90] at 6-7.

probative. *Id.* at 1, 5, 9.  Plaintiff asserts that "from the videotapes alone, a jury could conclude that the store employees knew the exact location of the hazard area—which is between the mat and the transition strip—and that Plaintiff tripped on a rise in elevation in the carpet."[12] *Id.* at 9.

<u>Legal Standard</u>

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the

---

[12] Both Plaintiff and Defendant argue in their briefing about the relevance and weight of Mr. Kendzior's testimony on causation.  *See* [Doc. 90] at 5–8; [Doc. 92] at 8–10.  However, because the Court finds that Mr. Kendzior's causation testimony is properly excluded pursuant to Fed. R. Civ. P. 702, *see supra*, it will not consider such testimony in evaluating whether Defendant is entitled to summary judgment.

non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citation omitted).

<u>Analysis</u>

To prevail on a negligence claim in New Mexico, the claimant must establish the following: "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach duty as cause of the injury." *Zamora v. St. Vincent. Hosp.*, 2014-NMSC-035, ¶ 22, 335 P.3d 1243; *see also Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43. An owner or occupant of a premises owes a visitor "the duty to exercise ordinary care to keep the premises safe for the visitor's use." UJI 13-1318 NMRA. A claimant must prove that the owner or occupant "failed to exercise ordinary care by rendering safe an unreasonably dangerous condition on the premises known to,

or discoverable upon reasonable investigation by, the owner or occupier." *Brooks v. K-Mart Corp.*, 1998-NMSC-028, ¶ 10, 125 N.M. 537.

A store owner is not "an insurer or guarantor of the safety of his [or her] business invitees." *Id.* (quoting *Hallett v. Furr's, Inc.*, 1963-NMSC-028, 71 N.M. 377, *overruled in part on other grounds*, *Proctor v. Waxler*, 1972-NMSC-057, 84 N.M. 361). Accordingly, "[n]egligence may not be presumed from the fact that an injury occurred." *Gutierrez v. Albertsons, Inc.*, 1991-NMCA-135, ¶ 16, 113 N.M. 256 (citing *Williamson v. Piggly Wiggly Shop Rite Foods, Inc.*, 1969-NMCA-088, 80 N.M. 591). Plaintiff must "come forward with some positive evidence of negligence." *Id.* Determining the existence of a duty is a question of law for the Court to decide, whereas breach of duty and proximate cause are questions of fact for the jury. *Herrera*, 2003-NMSC-018, ¶¶ 6, 33.

Defendant does not dispute that it owed a duty of care to visitors to keep its premises safe for use. It argues instead that Plaintiff has failed to make a sufficient showing as to the existence of any condition on its premises to which Plaintiff's fall could be attributed. If Plaintiff has failed to raise a triable issue of fact on this threshold element, as Defendant contends, then she cannot make a showing on remaining elements of her case: that the condition was unreasonably dangerous and that Defendant created the condition or unreasonably failed to discover it, breaching its duty of care to Plaintiff.

The Court finds that Plaintiff has created a triable issue of material fact as to the existence of a dangerous condition. Plaintiff has provided evidence, albeit thin, to support her alternative theories of causation. As to the buckle theory, Mr. Serna testified to having seen a buckle in the mat and having watched Plaintiff trip over it. It is true, as Defendant points out, that Mr. Serna

places the buckle in the southwest corner of the mat, while the surveillance video shows (and the parties agree) that Plaintiff actually fell near the northwest corner. But Mr. Serna's testimony is not so "utterly discredited" by the video such that it cannot be relied upon to create a material factual dispute. *See Safford v. Wal-Mart Stores, Inc.*, 2017 WL 2306410, at *4 (D.N.M. Feb. 16, 2017) (citing *Scott v. Harris*, 550 U.S. 372 (2007) (noting that surveillance video of an accident can be dispositive of factual disputes regarding how the incident occurred where the video "utterly discredit[s]" the opposing side's version of events)). Rather, the factual inconsistencies between Mr. Serna's testimony and the surveillance video go to his credibility and the proper weight accorded to his testimony, matters that are the unique province of the jury. *See Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001) ("The weighing of evidence, the reconciliation of inconsistent testimony, and the assessment of a witness'[s] credibility is solely within the province of the jury."). Likewise, the other record evidence to which Defendant points—e.g., that no buckle is visible on the surveillance video and that Mr. Kendzior did not see one when he inspected the mat—does not nullify Mr. Serna's testimony. It merely demonstrates the presence of a material factual dispute, the resolution of which is properly left to the jury.

The same is true as to Plaintiff's border theory. Plaintiff's expert measured the mat and found that the height difference between the carpeting and the border exceeded a quarter of an inch. The surveillance video shows that Plaintiff began to fall somewhere near the border.[13] A reasonable jury could find that the height difference created a tripping hazard and that Plaintiff's fall was attributable to that hazard. Again, Defendant's arguments to the contrary—e.g., that Mr. Kendzior could not quantify the precise height difference, that he inspected the mat more

---

[13] The Court has reviewed the video more than 20 times. The Court cannot find that the video conclusively rules out the possibility that Plaintiff tripped on the border.

than a year after the incident, and that the video seems to show Plaintiff falling forward before she reaches the border—go to the weight of the evidence. Plaintiff has raised a triable issue of material fact as to the alleged dangerous condition that caused her to fall, and resolution of that issue must be left to the jury.

At oral argument, Defendant complained that Plaintiff has changed her theory of liability repeatedly: First she pled that she had tripped over "debris." Then Mr. Kendzior's report stated that Plaintiff tripped over a "bunching up" of the mat. Then at his deposition, Mr. Kendzior said that Plaintiff could have tripped over a buckle in the mat or a change in elevation between the carpet and the border. Defendant argues that this has unfairly created a "moving target" for the defense, and that it cannot defend its case unless Plaintiff takes a position on the cause of the accident. Defendant is wrong on both points.

First, Defendant exaggerates by claiming that Plaintiff has created a "moving target." The Complaint alleges that "Plaintiff while in the process of shopping tripped on debris *or another obstacle which posed a tripping hazard*." [Doc. 1-1] at 2 (emphasis added). The Complaint goes on to allege that Defendant breached its duty of care to Plaintiff by, inter alia, failing to properly inspect, clean, and otherwise maintain its floors in a safe condition. *Id.* at 3. Thus, Defendant was on notice from the very beginning that Plaintiff claimed to have fallen as a result of Defendant's failure to properly clean, inspect, or otherwise maintain its floors. The fact that Plaintiff has not settled on one theory of causation is not fundamentally unfair to Defendant. It is, in fact, rather commonplace. *See, e.g.*, *Werth v. Makita Elec. Works, LTD.*, 950 F.2d 643 (10th Cir. 1991) (plaintiff, who could not remember how circular saw accident had occurred, presented two plausible theories of causation). In view of the surveillance video, Mr. Serna's

deposition testimony, and Mr. Kendzior's testimony on his inspection of the mat, both theories are plausible.

Second, Defendant has not been prevented from defending its case. It is not as if Plaintiff brought suit over an unreported accident that happened three years prior. Defendant was aware of the accident the instant it occurred. There were eyewitnesses to the accident and its aftermath. It was captured on video. Defendant's representatives began investigating the cause of the accident literally minutes after it occurred.[14] Defendant hired an expert to inspect the mat. In short, Defendant had every opportunity to investigate whether any defect in the mat caused Plaintiff to fall.

Plaintiff has come forward with sufficient evidence so as to create a material factual dispute as to the existence of a dangerous condition on Defendant's premises to which Plaintiff's fall could be attributed. The evidence is not robust, but it need not be to create a triable issue of fact. *See Dusseau v. Wal-Mart Stores, Inc.*, 2014 WL 12567156, at *3 (D.N.M. Feb. 14, 2014) (unreported) (evidence that spilled liquid had been left on floor for at least ten minutes, though "sparse," was sufficient to defeat summary judgment, as there was not "a total absence of any evidence" as to how long the spill had been there and by whom it had been created); *Cabrera v. Wal-Mart Stores East, L.P.*, 15-cv-0597 JCH/LF, [Doc. 60] at 11 (D.N.M. Nov. 4, 2016) (plaintiff's testimony on the condition of doorway transition strip, along with pictures of the strip and expert's testimony that it constituted a potential trip hazard, were sufficient to defeat summary judgment on the issue of the existence of a dangerous condition). Viewing the

---

[14] The Court is aware that there is a dispute over what the video depicts regarding the actions of Defendant's employee following the accident. Plaintiff claims that the employee stood on the mat to tamp down the buckle over which Plaintiff tripped. Defendant claims the employee was simply trying to discern why, in the absence of an obvious defect in the mat, Plaintiff would have tripped. The point is that under Defendant's scenario, the investigation into causation began within minutes of the accident.

evidence in the light most favorable to Plaintiff, the Court finds that Defendant has failed to show the lack of a material factual dispute that would entitle it to summary judgment.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion in Limine to Exclude the Testimony of Russell Kendzior [Doc. 89] is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. 90] is DENIED.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**